In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by JESSE S. PHILLIPS, as Superintendent of Insurance, Appellant, Respondent, for an Order to Take Possession of the Property and Liquidate the Business of the CASUALTY COMPANY OF AMERICA.

In the Matter of the Claim of CLAUDE M. BADGLEY, Respondent, Appellant.

Miscellaneous Claim No. 1.

First Department, May 27, 1921.

Corporations — liquidation of insurance corporation — subscription to new stock on false representations of president — transaction between claimant and president personal — claimant has no claim on assets, except as stockholder, where he accepted issued stock with knowledge.

In proceedings to liquidate an insurance company it appeared that the claimant, who was a stockholder, wrote to the president personally, sending him a check to cover a subscription for fifty shares of a new

issue of stock; that said check was sent in response to a personal letter from the president, who was a friend of the claimant; that the president's letter contained false representations as to the financial standing of the company, that the letter from the claimant specifically stated that he was sending the check to the president personally and on his guaranty that the stock would pay dividends as the president represented; that at the time the check was received all of the stock had been subscribed and fifty shares were purchased from another stockholder to fill claimant's order; that claimant knew he was not to receive new stock sometime before the certificates were issued, and that claimant's check was deposited to the credit of the insurance company and the stock transferred to the plaintiff was purchased with the company's check.

*Held*, that the claimant has no claim against the assets of the insurance company in the possession of the Superintendent of Insurance, except as a stockholder.

The company was not liable for the false representations of its president, since the transaction between the claimant and the president was purely personal and the company received no benefit therefrom.

In the use of the claimant's check to purchase issued stock of the new issue, the president was acting for the claimant, and by accepting it with knowledge that it was issued stock, the claimant ratified the act of the president.

APPEAL by Jesse S. Phillips, as Superintendent of Insurance, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of July, 1920, denying said appellant's motion to dismiss and disallow the claim of Claude M. Badgley.

Appeal by Claude M. Badgley from so much of said order as allows interest on said claim only to May 4, 1917, and fails to allow interest to date of payment, and in so far as it fails to allow preference for the full amount of claim and interest from January 3, 1916, to date of payment.

*Colin McLennan* of counsel [*Joseph P. Nolan* with him on the brief; *Clarence C. Fowler*, attorney], for the State Superintendent of Insurance.

*Michel Kirtland*, for the claimant Claude M. Badgley.

PAGE, J.:

On May 4, 1917, an order of liquidation was made, pursuant to which the Superintendent of Insurance took possession of

the property of the Casualty Company of America under section 63 of the Insurance Law (added by Laws of 1909, chap. 300, as amd. by Laws of 1912, chap. 217, and Laws of 1913, chap. 29; since amd. by Laws of 1918, chap. 119). The order contained an injunction against further proceedings in pending actions. At that time there was pending an action brought by Claude M. Badgley against the Casualty Company to recover the sum of $1,250, with interest from January 3, 1916. Thereafter Badgley filed his claim with the liquidator, who in a report filed in June, 1918, disallowed the claim. Objection was filed to the rejection and a restatement of the claim made by Badgley. The issues raised by the report, objection and restatement of claim were referred to a referee to take evidence and report with his opinion. The referee reported with his opinion that the claim should be allowed for $1,250, with interest from January 3, 1916, to May 4, 1917. Three hundred and twenty-nine dollars and fifty-two cents of the amount, with costs, was allowed as a preferred claim.

Claude M. Badgley and his wife were original subscribers to the stock of the Casualty Company on its incorporation in 1903, each taking 25 shares. In 1915 the capital of the company became impaired, and at a special meeting of the stockholders held December 29, 1915, it was voted to reduce the capital of the company from $750,000 to $562,500 by changing the capital stock from 7,500 shares of a par value of $100 each to 22,500 shares of a par value of $25 each. Subsequently it was voted to issue 7,500 shares of new stock at par, thus increasing the capital from $562,500 to $750,000. This reduction and increase became effective December 31, 1915, when it was approved by the Superintendent of Insurance, and on the same day subscriptions for the entire issue of new stock were paid in to the company.

On December 28, 1915, Mr. DeLeon, the president of the company, who for many years had been a friend of Mr. and Mrs. Badgley, wrote a personal letter to Mr. Badgley, in which he stated for Mr. Badgley's confidential information, referring to the proposed increase, " that it is more than likely that the stock will be placed upon an 8% dividend basis next year, and a semi-annual dividend of 4% declared in January, so that any new stock subscribed for by you will receive the first

dividend next month. The company has never been in a more substantial and stronger position than at the present time, and will show at the end of the year total assets of over $3,700,000; total reserves of over $2,900,000, and a premium income of over $3,500,000." The letter further stated the future policy of the directors in regard to paying substantial dividends out of profits and a stock dividend.

On December 31, 1915, Mr. Badgley answered with a letter from Boston, Mass., in which he stated that he had not considered subscribing for any new stock in the company, but that DeLeon's statement of facts had " put another phase to it," and then continued, " on your personal guarantee of the intentions of the Board as to going on an 8% basis and your assurance of the company's ability to do this and maintain it, I have decided to subscribe for the 50 shares that are Mrs. Badgley's and my allotment of the new stock. I enclose you herewith check for $1,250 covering the amount. I am doing this solely on your personal recommendation, and in the hope that the additional amount at par will so help out our average that the total may eventually show us an even break as an investment. For this reason I am sending you the check, personally, leaving it in your hands. I do not want the investment unless you know it is going to turn out this way." The check inclosed, drawn to the order of the Casualty Company of America, was deposited to its credit in the Manufacturers' National Bank of Troy, N. Y. On January 3, 1916, DeLeon, as president of the company, wrote acknowledging the receipt of Badgley's letter " with check for $1,250 subscription for fifty shares of new stock of the company."

When this check was received from Badgley all the new stock had been subscribed and paid for. Among those who had subscribed for the new stock was William Gow of Troy. The company drew a check to his order on the Manufacturers' National Bank of Troy for $3,375, which included the $1,250 subscribed by Badgley and the subscriptions of two others, delivered the check to Gow, and received from him certificates of the new stock which were transferred to several persons, and the twenty-five shares each were then transferred from Gow to Mr. and Mrs. Badgley.

DeLeon ceased his connection with the company in January, 1916. As a result of an examination of the company by the Insurance Department it was discovered that the capital of the company was still impaired, and on April 19, 1916, a stockholders' meeting was called to be held May fourth, for the purpose of reducing the capital stock from $750,000 to $300,000. Badgley received this notification and wrote to the then president, referring generally to representations that had been made to him at the time he took the new stock, which had never been lived up to and which subsequent events had proved were never intended to be. He then continued: " Therefore, I consider that the company have $1,250 of my money, and I am prepared to turn back this stock and receive a check for it or have its equivalent in the stock about to be issued allotted to me." There ensued considerable correspondence. In a letter dated September 15, 1916, Badgley reiterated his claim for a return of his money or an equivalent amount of the new stock at $10 per share. The general counsel of the company wrote Mr. Badgley on December 9, 1916, that the Insurance Department of the State of New York had forbidden the company to pay any claims pending further advices. On March 12, 1917, an action was commenced in the Supreme Court by the service of a summons with notice stating that judgment would be taken for $1,250 with interest from January 3, 1916. Time to serve a complaint was extended until some time in May, and before the time expired the injunction order heretofore mentioned was served. We are, therefore, not informed of the cause of action that was to be alleged against the company in this action. As no tender of the stock had been made prior to the commencement of the action, the only remedy that would have been available to the plaintiff was in equity for a rescission. Tender of the stock is made in the claim filed with the Superintendent of Insurance and was also made upon the hearing before the referee.

It is unfortunate that the notice to stockholders of the proposed increase of capital stock which is referred to in Mr. DeLeon's letter to Mr. Badgley was not offered in evidence, so that the court could be advised of what knowledge Mr. Badgley had of the proposed transaction. It would appear

that it had been arranged that the entire new issue would
be underwritten and that the allotments to stockholders were
to be made out of the stock issued to the underwriters, for
the entire new issue of stock was authorized by the stock-
holders on December 29, 1915, and approved by the Superin-
tendent of Insurance on December 31, 1915, and on the latter
date not alone was the entire issue subscribed for, but the
cash therefor was paid into the treasury of the company.
If this plan was known to Badgley when he sent the check
to DeLeon, there would be no force in his present contention
that his check was to be applied on a subscription for new
stock, and that the purchase of issued stock was unauthorized.
Whatever was his knowledge on this subject before he sent
the check, he was fully informed of the fact that the sub-
scriptions for the entire issue of new stock were paid in to
the company on December 31, 1915, by the letter of the
treasurer of the company dated January 10, 1916, which was
more than three weeks before the certificates of the new
stock were delivered to him. Neither at that time nor at
any time until this proceeding was brought did he make any
objection that his check had been used to purchase the stock,
and not as a subscription.

DeLeon used the company's bank account merely as a
conduit through which the money was transmitted from
Badgley to William Gow, a subscriber for the new stock, to
purchase 50 shares thereof for Badgley. The company
received no benefit from the transaction, and did not, therefore,
become liable for DeLeon's false representations. DeLeon's
letter in which the representations were made was a personal
letter to Badgley and Badgley transmitted the check to
DeLeon, not as president acting on behalf of the corporation,
but as a personal friend in whom he reposed confidence, as
appears from the extract heretofore quoted from the letter
written by Badgley to DeLeon dated December 31, 1915:
" I enclose you herewith check for $1,250 covering the amount.
I am doing this solely on your personal recommendation, and
in the hope that the additional amount at par will so help out
our average that the total may eventually show us an even break
as an investment. For this reason I am sending you the check,
personally, leaving it in your hands. I do not want the

investment unless you know it is going to turn out this way."
In the use of the check to purchase issued stock of the new
issue, DeLeon was acting for Badgley, and by accepting the
stock Badgley ratified DeLeon's act.

Our conclusion, therefore, is that Badgley has no claim
against the assets of the company in the possession of the
Insurance Superintendent, except as a stockholder. If he
has suffered damage by relying on DeLeon's representations,
he must seek his redress from DeLeon. The order will,
therefore, be reversed, with costs to the Superintendent of
Insurance, and the claim dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ.,
concur.

Order reversed, with costs and disbursements to the
Superintendent of Insurance, and claim dismissed, with costs.